**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EDSAL MANUFACTURING COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 11 C 9287 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| VAULT BRANDS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Edsal Manufacturing Company, Inc. filed its complaint against Defendant Vault Brands, Inc. alleging Trademark Infringement (Count I), False Designation of Origin (Count II), and Unfair Competition (Count III) under the Lanham Act, as well as violations of state laws that prohibit deceptive trade practices and unfair competition (Count IV). Prior to engaging in any court-supervised discovery, Defendant moved for summary judgment [17] on all counts. In lieu of requesting discovery pursuant to Federal Rule of Civil 56(d), Plaintiff responded to Defendant's summary judgment motion. The matter is now ready for disposition. For the reasons explained below, the Court grants Defendant's motion for summary judgment [17].[1]

**I.      Background**

    **A.      Statements of Facts**

The Court has taken the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements. Local Rule 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence. See L.R. 56.1;

---

[1]   The Court also grants Plaintiff Edsal's motion to file sur-reply to Defendant's reply in support of motion for summary judgment [29], as Defendant's reply brief raised issues that warranted a response from Plaintiff.

*Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000).  It is the function of the Court, with or without a motion to strike, to review carefully statements of material facts and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement.  See, *e.g.*, *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, 2006 WL 980740, at *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 920 n.1 (N.D. Ind. 2004).  The Court's scrutiny of material statements of facts applies equally to the party seeking summary judgment and the party opposing it.

Prior to setting forth the background facts in this case, one point is worth mentioning.  Where a party offers a legal conclusion in a statement of fact, the Court will not consider that statement.  *Malec v. Sanford,* 191 F.R.D. at 583.  Throughout its statement of additional facts, Edsal continuously refers to the term "Vault" as its "trademark" or "mark."  In its sur-reply, Edsal then chides Defendant Vault for failing "to properly respond to Edsal's Statement of Additional Facts" because Defendant denies several of Plaintiff's fact statements for the reason that "Vault denies that Edsal has a 'Vault' trademark."  In the circumstances of this case, Edsal's assertion that it has a valid and protectable right in the term "vault" as a trademark is a legal conclusion, not a statement of fact.  In fact, the primary dispute between the parties is whether Edsal can demonstrate that it has a valid and protectable right in the term "vault."  Defendant was correct to deny any statement that it believed contained a legal conclusion.  Any statements or responses from either party that contain legal conclusions or argument will not be considered by the Court in ruling on the summary judgment motion.

**B.     Facts**

Plaintiff Edsal Manufacturing Company, Inc. ("Edsal"), an Illinois corporation, has its principal place of business in Chicago, Illinois.  Edsal was founded in 1957 and has continuously sold a number of industrial products, including shelving, racking, and storage systems, to businesses.  In its complaint, Edsal alleges that it has manufactured, offered for sale, and sold products under the "Vault" mark, including metal cabinets, since 1996.  Edsal maintains that it markets one of its product lines as its "Vault" line of cabinets and that some of its customers commonly refer to this product line as the "Vault" product line.

Defendant Vault Brands, Inc. ("Vault"), a privately held Delaware corporation, has its principal place of business in Beaverton, Oregon.  Founded in 2005, Vault designs and sells custom-built metal cabinets and offers its products for sale on its website at http://www.vaultgarage.com/.  Vault affixes the VAULT mark to its custom-built metal cabinets. On May 30, 2006, Vault filed an application to register the VAULT mark for custom built-to-order metal cabinets with the United States Patent and Trademark Office ("USPTO").  On June 3, 2008, the USPTO granted registration of the VAULT mark to Vault with U.S. Registration Number 3,440,709 ('709 Reg.).

In 2011, Vault and Edsal became embroiled in a dispute over their respective uses of and rights to the VAULT trademark.[2]  Edsal then commenced this lawsuit on December 29, 2011. Although Edsal alleges that it has marketed and sold metal cabinets under the "vault" mark since 1996, Edsal did not apply to register the term "vault" until fifteen years later when this dispute arose.  On December 27, 2011, two days prior to filing this lawsuit, Edsal filed an application with the USPTO to register the term "vault" as a trademark for "metal storage cabinets not being

---

[2]  Edsal's emphasis on the pre-litigation conduct between the parties is misplaced.  The law is what the law is; the parties' posturing in the months prior to the lawsuit has no bearing on whether Edsal's use of the term "vault" between 1996 and 2006 gave it a valid and protectable right in the term as a trademark.

furniture, and component parts therefor." As of March 16, 2012, Edsal's application was still pending.

Edsal's application and the specimens attached thereto use the term "vault" to identify its locking metal cabinets. In one specimen, Edsal uses "vault" and other descriptive terms, including "commercial," "industrial," "visual," "safety," "modular drawer," "welded bin," and "flush door," to describe functions or features of its metal cabinets. The term "vault" appears in the same font, size, and color as the terms used to describe Edsal's other cabinets. In the same specimen, Edsal claims, "From Commercial, to Industrial, to Flammable, to Vault – Edsal can meet all your storage needs!" In the second specimen, Edsal lists the features of its "flush door and vault cabinets" and includes pictures of each. In this specimen, "vault" cabinets, which are locking cabinets, are distinguished from "flush door" cabinets.

A catalog of Edsal's industrial storage cabinets is available on Edsal's website. Defendant Vault does not dispute that Edsal's catalogues (print and online) and website display the word "vault" in connection with Edsal's vault cabinets or that these catalogs provide ordering information for vault-style cabinets. Excluding duplicate pages and pages that are not intended for public viewing, the term "vault" appears on fewer than 10 pages of Edsal's approximately 559-page website.[3] On a page that shows Edsal's various "Storage Cabinets," "vault" is one of many descriptive terms used to identify its cabinets. The term "vault" appears in the same font, size, and color as the descriptive terms in the other cabinets' labels. Edsal's online catalog also contains a page titled "Welded and Vault Cabinets" that also displays the term "vault." The "Vault Cabinets" page on Edsal's website lists the vault cabinets that Edsal sells and describes the vault cabinets' features or function: "Combine the heavy-duty construction of our popular

---

[3] There are approximately 20 additional pages on Edsal's Web site that contain the term "vault," but these pages either are duplicates of the pages described or are otherwise not intended for public viewing.

all-welded cabinets with the security of a three-point door-latch system." The "Support" page on Edsal's website has a link to assembly instructions for Edsal's vault cabinets. The term "vault" appears at the top of this sheet of instructions. Edsal has similar instructions for most of its cabinets, including its "commercial," "safety," "industrial," "welded bin," and "extra heavy duty" cabinets. A list of Edsal's various cabinets appears as follows: "Mobile Storage Cabinets," "Safety Cabinets," "Cabinette," "Commercial and Industrial Cabinets," "Flush Door & Vault Cabinets," "Visual Cabinets," "Welded Bin Cabinets," "Extra Heavy Duty Cabinets," and "Modular Drawer Cabinets."

Looking at a page from a 1996 Edsal catalogue, customers are presented with the heading "New" "Vault Cabinets." In the 1996 catalogue, "Vault Cabinets" are described in an almost identical manner to the way that they are described on Edsal's website: as combining the "heavy duty construction of our popular all welded cabinets with the security of a 3 point door latch system." There is no dispute that Edsal's catalogues provide model numbers, description of products, and information necessary to place an order directly with Edsal. There also is no dispute that catalogues from 1998, 2001, and 2005 display much of the same information on "Vault Cabinets," in predominantly the same way.

According to Edsal's Vice President, the "Vault" product line is presented to customers and potential customers in two primary ways. In some situations, the sales representative brings the potential customer to Edsal's showroom, which displays physical cabinets. Edsal sales representatives then show the customer the vault-style cabinet, and identify the cabinet as part of Edsal's "Vault" product line, and also direct the customer to Edsal's catalogue, which lists each of the cabinet types, including the "Vault Cabinet." In other situations, Edsal representatives go to the customer's place of business, where the goods are shown through Edsal's catalogs.

Neither Edsal's website nor its application displays any trademark identifiers, such as the "TM" symbol, next to any of the terms that Edsal uses to describe its metal cabinets. By contrast, Edsal does display the "TM" symbol next to its trade name ULTRACAP. Edsal lists seventeen trade names on its website (i.e. Ambassador, Citadel, FeatureLine, and approximately fourteen others); "Vault" is not one of the trade names listed by Edsal (nor are the terms "vault," "safety," "storage," "flush door," "modular," "commercial," and "industrial").

## II.      Standard of Review

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586

(1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

In trademark cases, whether the use of a word or phrase constitutes trademark use is a question of fact. See *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001) ("In a trademark infringement case, the classification of a word or phrase as descriptive, the determination that a defendant's use was a non-trademark use in good faith, and the finding that consumers are not likely to be confused about the origin of a defendant's products are questions of fact."). Nevertheless, these issues may be resolved on summary judgment "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *Door Sys., Inc. v. Pro–Line Door Sys., Inc.,* 83 F.3d 169, 171 (7th Cir. 1996).

## III.     Analysis

Edsal brought this action alleging federal Lanham Act claims for (I) trademark infringement, (II) false designation of origin, and (III) unfair competition, as well as similar state-law causes of action. The Court addresses the federal claims first.

### A.     Lanham Act claims

The Lanham Act "protect[s] an owner's interest in its trademark by keeping the public free from confusion as to the source of goods and ensuring fair competition." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 958 (7th Cir. 1992) (quoting *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 490 (2d Cir. 1988)) (quotation marks omitted). "To prevail on a Lanham Act claim, a plaintiff must establish that (1) [its] mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001); see also *Ty, Inc. v. The Jones Group,*

*Inc.*, 237 F.3d 891, 897 (7th Cir. 2001). With respect to the first element of a Lanham Act claim, a mark is protectable by the "party who first appropriates the mark through use, and for whom the mark serves as a designation of source." *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999). "[A] plaintiff must show that it has actually used the designation at issue *as a trademark*;" i.e., to "perform[ ] the trademark function of identifying the source of the merchandise to the customers." *MicroStrategy Inc. v. Motorola*, 245 F.3d 335, 341 (4th Cir. 2001) (quoting *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998)) (quotation marks omitted) (original emphasis); *cf. Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 729 (7th Cir. 1998) (holding there was no confusion regarding plaintiff's mark because the purported mark was not a "designator of a specific source"). Edsal alleges that it has trademark rights in the term "vault" for locking metal cabinets with reinforced doors and further alleges that Defendant Vault's line of products, including metal cabinets, under Vault's registered mark "VAULT" infringes Edsal's alleged trademark rights. Defendant Vault challenges Edsal's assertion that it has a protectable interest in the term "vault."

Based on the law set forth above, in order to prevail on each federal claim, Edsal must establish that (1) it has valid and protectable rights in the term "vault" as a trademark, i.e., as an indication of source, and (2) Edsal acquired such rights prior to Defendant's acquisition of rights in the trademark VAULT for cabinets. As set forth previously, Defendant acquired the trademark VAULT for custom built-to-order metal cabinets and related components based on U.S. Reg. No. 3,440,909, with a filing date of May 30, 2006, and a first use date of September 28, 2005.

This is not a difficult or close case. The issue boils down to whether Edsal used the term "vault" as a trademark or whether such use was in a merely descriptive manner to describe a type of cabinet. Before a word can become a trademark, it "must be used in such a manner that its nature and function are readily apparent and recognizable without extended analysis or research and certainly without legal opinion." *MicroStrategy*, 245 F.3d at 342. "A word * * * functions as a trademark when it is 'used by a source of [a product] to identify itself to the public as the source of its [product] and to create in the public consciousness an awareness of the uniqueness of the source and of its [products].'" *Sands*, 978 F.2d at 953 (quoting *M.B.H. Enters., Inc. v. WOKY, Inc.*, 633 F.2d 50, 53-54 (7th Cir. 1980)). A party's failure to use a term as a trademark prevents that party from acquiring trademark rights in the word.

For instance, in *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902 (9th Cir. 1995), the Ninth Circuit affirmed summary judgment against the plaintiff's claim of trademark infringement because the plaintiff failed to use the term "Paramahansa Yogananda" as a mark—"to identify [the plaintiff's] products as distinctively [the plaintiff's]." 59 F.3d at 906, 907. The plaintiff "did not use the term 'Paramahansa Yogananda' with any of the traditional trademark indicia," such as "a 'TM' sign next to it." *Id.* at 907. In addition, all of the specimens that the plaintiff submitted with its application to the USPTO to register the name "Paramahansa Yogananda" "d[id] not use Yogananda's name in a manner consistent enough to be an identifying mark." *Id.* The plaintiff's submissions to the USPTO "only support[ed] the conclusion * * * that [the term] 'Paramahansa Yogananda' d[id] not" create a direct association between the plaintiff and its products. *Id.* Similarly, in *Vita-Mix Corp. v. Basic Holding, Inc.*, the Federal Circuit affirmed summary judgment against a claim for trademark infringement of the number 5000 for a blender. 581 F.3d 1317, 1331 (Fed. Cir. 2009).

The court reasoned that "5000 function[ed] only to distinguish the [Vita-Mix® 5000] blender from previous Vita-Mix products on the market." *Id.* at 1330. "[T]he trademark Vita-Mix® identifie[d] the source of the goods, and the designation 5000 indicate[d] the style or grade of product." *Id.* Therefore, the court concluded "[n]o reasonable jury could find that * * * Vita-Mix's * * * use of the number 5000 [wa]s a protectable trademark use." *Id.* at 1331.

Edsal's primary argument is that it has been using the word "vault" for years to describe its locking metal cabinet. Vault does not dispute the fact that Edsal has used the word "vault" to describe its locking cabinets for many years. Rather, Vault contends that Edsal's use of "vault" has been no different than its use of other descriptive or generic words, such as "industrial," "commercial," and "flush door," and that none of these terms are capable of designating the source of Edsal's cabinets, which is the essence of a trademark, because they simply describe or refer generically to different types of cabinets that Edsal sells.

Based on the limited but clear record, prior to May 2006, Edsal never used "vault" to designate the source of its cabinets. See, *e.g.*, *Self-Realization*, 59 F.3d at 907 (affirming summary judgment against plaintiff's trademark infringement claim because plaintiff "ha[d] not shown that it use[d] [the purported mark] in a service mark manner"). This conclusion is abundantly apparent from looking at Edsal's catalogue and website. Edsal uses "vault" to reference its locking storage cabinet. "Vault" is defined by Webster's Dictionary as a "compartment for the safekeeping of valuables," which is what Edsal's locking storage cabinet does. MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1308 (10th ed. 1995). Edsal uses "vault" in the same manner as it uses other generic terms, such as "safety," "commercial," "industrial," "flush door," "welded bin," "heavy duty," and "modular," to designate or describe the function or purpose of the cabinets, as illustrated by its slogan: "From Commercial, to Industrial, to

Flammable, to Vault – Edsal can meet all your storage needs!"  These terms—commercial, industrial, flammable, safety, flush door, welded bin, and vault—do not identify the source, rather they describe the function, purpose, or quality of Edsal's cabinets.  See, *e.g.*, *Vita-Mix*, 581 F.3d at 1330 (holding Vita-Mix's use of the number 5000 to designate grade or quality was not a trademark use).  None of these generic terms, used in this context, are trademarks, and none of them, including "vault," are branded to the cabinets that Edsal sells.

The fact (highlighted by Plaintiff) that the heading "Vault Cabinets" in past catalogues is in a different font or larger typeface than the cabinet's description or model numbers does not alter the result in this case.  Headings like "Safety Cabinets," "Commercial and Industrial Cabinets," "Welded Bin Cabinets," and "Extra Heavy Duty Cabinets" also are set off from their descriptions with different fonts or larger typefaces, but those terms remain generic terms.  Edsal does not use "vault" differently than any other generic words used to describe its storage cabinets.  Rather, Edsal uses "vault" on its website and in its print and online catalogues in the same font, size, and color as these other generic terms.  In these circumstances, none of these terms are capable of designating the source of Edsal's cabinets (which is the essence of a trademark) because these terms simply describe or are generic for different types of cabinets that Edsal sells.

Edsal also argues that it has used the term "vault" in commerce for years and therefore it has a valid and protectable right in the term.  The issue in each of the cases cited by Edsal was whether the specimens that were attached to the trademark applications showed use of the purported marks in connection with goods in commerce.  See *In re Sones*, 590 F.3d at 1284 ("[T]he PTO requires the applicant to submit a specimen of use 'showing the mark as used on or in connection with the goods.'"); *In re Dell*, 71 U.S.P.Q.2d at 1726 ("The sole issue * * * is

whether the specimen submitted by applicant * * * is acceptable to show use of the mark in connection with the identified goods."); *Lands' End*, 797 F. Supp. at 513 ("The question * * * is whether * * * [Applicant's] use of the term * * * satisf[ies] the use in commerce provision."). These cases concern only whether a specimen shows use of a purported mark in commerce sufficient to support the mark's registration, not whether a term functions as an indicator of source. Although use in commerce is essential for trademark rights, use of a merely descriptive or generic term will not on its own create trademark rights. As previously stated, a trademark is protectable by the "party who first appropriates the mark through use, *and for whom the mark serves as a designation of source*." *Johnny Blastoff, Inc.*, 188 F.3d at 434 (emphasis added). Both prongs—use in commerce and trademark use—must be proven by the applicant. While Edsal uses "vault" in commerce, Edsal's use of "vault" to describe or refer to a generic quality or feature of its locking metal cabinets is not a trademark use. Edsal's abundant descriptive and generic use of "vault" for locking metal cabinets may be in commerce but that use cannot generate trademark rights.

In sum, Edsal falls far short of establishing that it has a valid and protectable right in the term "vault" as a trademark. Edsal never uses a "TM" to identify "vault" as a trademark. Furthermore, nothing in Edsal's materials indicates or even attempts to associate "vault" with the *source* of its cabinets. *Cf. MicroStrategy*, 245 F.3d at 342 (holding that trademark usage must be "readily apparent and recognizable without extended analysis or research and certainly without legal opinion"); see also *Sands*, 978 F.2d at 954 (holding that a term is used as a mark when it is more prominent and in larger type than the surrounding text). Finally, Edsal's own list of seventeen trade names on its website fails to include "Vault." Edsal's obvious failure to use the term "vault" as a trademark prior to May 2006 prevents Edsal from acquiring any trademark

rights to the term "vault." Accordingly, Edsal's claims for trademark infringement, unfair competition, and deceptive trade practices all fail.

### B. State Law Claims

Because the Court grants summary judgment to Defendants as to all claims (Counts I, II, and III) over which it has original jurisdiction, it must now address whether to retain jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(3). In addition to alleging Trademark Infringement (Count I), False Designation of Origin (Count II), and Unfair Competition (Count III) under the Lanham Act, Plaintiff claims that Defendant violates state laws that prohibit deceptive trade practices and unfair competition (Count IV). Defendant claims that "federal and state laws regarding trademarks and related claims of unfair competition are substantially congruent" (see *TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997)); however, in certain instances, state law presents distinct considerations which could affect the Court's analysis. The Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Finding no justification for departing from that "usual practice" in this case,[4] the Court dismisses without prejudice the state law claims asserted in Count IV of the complaint.

---

[4] In *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court. See 735 ILCS 5/13-217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). Dismissal

## IV.     Conclusion

For the reasons stated above, the Court grants Defendant's motion for summary judgment [17] as to Counts I, II, and III of Plaintiff's complaint.  The Court also grants Plaintiff's motion to file sur-reply to Defendant's reply in support of motion for summary judgment [29].  Judgment is entered in favor of Defendants on Plaintiff's claims of Trademark Infringement (Count I), False Designation of Origin (Count II), Unfair Competition (Count III) under the Lanham Act.  The Court dismisses without prejudice the remaining state law claims (Count IV).

Dated:  November 15, 2012                    _____
                                             Robert M. Dow, Jr.
                                             United States District Judge

---

without prejudice also is appropriate here because substantial judicial resources have not been committed to the state law counts of Plaintiff's complaint, particularly given the parties' almost non-existent briefing on the matter.  *Wright*, 29 F.3d at 1251.  Finally, because the parties have not briefed these issues thoroughly, this is not a circumstance in which "it is absolutely clear how the pendent claims can be decided."  *Id.*